Filed 2/14/14  In re Santos G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re SANTOS G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SANTOS G.,<br><br>    Defendant and Appellant. | G048088<br><br>(Super. Ct. No. DL039524)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cheryl L. Leininger, Judge. Affirmed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

*            *            *

Appellant Santos G. appeals from the juvenile court's findings in this case involving an assault on Juanita A., Santos's mother. Santos argues the court should have excluded the audio recording of Juanita's 911 call and her statements to a police officer as testimonial hearsay. We find no abuse of discretion in admitting the evidence and therefore affirm.

I

FACTS

As relevant here, beginning in 2011, a number of Welfare and Institutions Code section 602 petitions were filed with respect to Santos for various offenses. In December 2011, pursuant to a negotiated agreement, he was declared a ward of the court and ordered to comply with probation conditions.

On January 29, 2013, a new petition was filed alleging Santos, age 16 at the time, committed assault (Pen. Code, § 240, count one); battery (Pen. Code, § 242, count two); and vandalism (Pen. Code, § 594, subds. (a), (b)(2)(A), count three) based on the following factual allegations. All charges were misdemeanors. A contested jurisdictional hearing was held on this petition in February.

Juanita testified that on January 25, 2013, Juanita was called by police officers to pick up Santos, who was in violation of curfew. She picked him up at a gas station. While they were driving home, Juanita took Santos's cell phone away to discipline him. Juanita described Santos's reaction as "a little bit angry," although she said did not recall the specifics. She stated she was taking multiple medications and "everything went blurry" for her. She suffers from bipolar disorder, which cause mood swings and disproportionate anger, and memory loss due to a prior coma. Her medications can cause drowsiness and dizziness, among other side effects.

Once they arrived at home, Santos began yelling. Juanita did not recall what he said, but remembered that he began throwing pillows. She went to her bedroom. He asked that she return his phone, and she said no. When she testified at the

2

jurisdictional hearing, she stated she did not recall much of what followed. She did not recall Santos trying to get into her bedroom, but she had locked the bedroom door. Eventually, however, she called 911.

At the jurisdictional hearing, she did not recall saying everything she had said to the 911 operator, but she recognized her voice on the recording, and she identified herself by name. Over defense objection, the 911 call was admitted into evidence. At the outset of the call, the operator asked Juanita to "take a deep breath for me." Juanita said that her son broke her television, was kicking "everything" and throwing clothes on the floor, and she wanted him out of the house. The transcript states there was "inaudible yelling in background," and the 911 operator stated she could hear Santos. After obtaining some facts about Santos, the operator said: "Just try to stay calm and avoid confrontation with him." Juanita asked the operator to tell the police to be quiet when they came to the home.

Steve Fisher, a gang investigator for the Orange Police Department, responded to the call. He knew Santos as an active probationer who was a documented participant in the gang known as Orange Varrio Cypress. When Fisher arrived at the home, he observed that Santos was out of breath, his hands were fidgeting, and he seemed upset about something. After contacting Santos, he spoke with Juanita. At the jurisdictional hearing, over the defense's objection, Juanita's statements to Fisher were deemed admissible. Juanita told Fisher that once they arrived home after Juanita picked Santos up that evening, Santos had begun screaming at her and using profanity. He also began chasing her with his hands raised, and she had eventually ran out of the living room because she was afraid he was going to hurt her. Santos kicked over and broke a laundry basket, and backed Juanita onto the bed as he continued to scream at her. He slammed down a flat screen television onto the dresser, breaking the base of the stand. He began throwing pillows around the bedroom, and used one of them to hit Juanita four

3

or five times on her shoulders and back. Fisher personally observed the crack in the laundry basket and the broken base of the television stand.

The juvenile court found that Juanita's testimony about her recollections of that night were not credible, in spite of the medications she was taking. The court stated that "she had very selective memory." At the conclusion of the hearing, the court found all counts to be true. Santos was placed on probation and ordered to serve 120 days in custody, with credit for 29 days previously served. He now appeals.

## II

## DISCUSSION

*911 Call*

Santos argues that Juanita's 911 call should not have been admitted into evidence because it was inadmissible hearsay and violated his Sixth Amendment right to confrontation. We address the hearsay question first.

The juvenile court overruled defense counsel's objection to the 911 tape, apparently agreeing with the prosecutor that the spontaneous statement exception to the hearsay rule applied. Evidence Code section 1240 provides that the hearsay rule does not make a statement inadmissible if the statement "(a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." There are three requirements for statements to be admissible under this exception to the hearsay rule: "'(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' [Citations.]" (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) "'"The crucial element in determining whether a declaration is sufficiently reliable to be

4

admissible under this exception to the hearsay rule is . . . the mental state of the speaker. The nature of the utterance—how long it was made after the startling incident and whether the speaker blurted it out, for example—may be important, but solely as an indicator of the mental state of the declarant. . . .'" [Citations.]" (*People v. Blacksher* (2011) 52 Cal.4th 769, 817.)

Here, there were numerous indications from the 911 call that Juanita's statements qualify under the exception. Juanita described Santos "flinging . . . all the things on the phone and on the floor" and "throwing everything in the house." Further, there were indications that she was nervous and breathless — the operator asked her to "take a deep breath," to "try to focus," and "to stay calm." Taken together, these are sufficient indicia that her statements were spontaneous and unreflecting, and apparently took place while Santos continued to act out.

While Santos argues that the statement that the police should "be real quiet when they come please" indicates reflection, it could be interpreted to indicate that the tumult was still ongoing, and she feared Santos's reaction if he heard police approach. He argues that a "pillow fight" does not present any serious danger of injury and that Juanita just wanted the police to make Santos leave. Even if we accepted this as true, it is not conclusive on the issue of whether her mental state was reflective. The totality of the circumstances supports the conclusion that the incident was still ongoing, and that Juanita was anxious and nervous during the call. The court, therefore, did not abuse its discretion in concluding the hearsay exception applied.

With respect to the argument that the 911 call was testimonial under the Sixth Amendment, Santos argues that "911 operators are part of the government structure" and therefore are collecting information that can be useful in court proceedings. Our Supreme Court has held that "a statement is testimonial when two critical components are present. [¶] First, to be testimonial the out-of-court statement must have been made with some degree of formality or solemnity," and "[s]econd . . . an

5

out-of-court statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (*People v. Lopez* (2012) 55 Cal.4th 569, 581-582.)

Many cases have deemed 911 calls as not testimonial, starting with the United States Supreme Court in *Davis v. Washington* (2006) 547 U.S. 813, 827. Such calls are "ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." (*Ibid.*) We reject Santos's efforts to distinguish *Davis*, and California cases have agreed that 911 calls are not testimonial. (See, e.g., *People v. Gann* (2011) 193 Cal.App.4th 994, 1008–1009; *People v. Johnson* (2010) 189 Cal.App.4th 1216, 1225-1226.) Here, the 911 call was describing ongoing or immediately past events, it had no indicia of formality, and its primary purpose was to get police assistance. The court did not err by concluding the call was nontestimonial.

*Fisher's Testimony*

Santos next argues the juvenile court improperly admitted Juanita's statements to Fisher as prior inconsistent statements under Evidence Code 1235. As relevant here, that section states that "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." That section explains that a witness's inconsistent statement is inadmissible unless "[t]he witness was so examined while testifying as to give him an opportunity to explain or to deny the statement . . . ." (Evid. Code, § 770, subd. (b).)

"The 'fundamental requirement' of section 1235 is that the statement in fact be *inconsistent* with the witness's trial testimony. [Citation.] Normally, the testimony of a witness that he or she does not remember an event is not inconsistent with that witness's prior statement describing the event. [Citation.] However, courts do not apply this rule mechanically. 'Inconsistency in effect, rather than contradiction in express

6

terms, is the test for admitting a witness' prior statement [citation], and the same principle governs the case of the forgetful witness.' [Citation.] When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied. [Citation.] As long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of his or her prior statements is proper. [Citation.]" (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220.)

Here, with respect to Juanita's alleged memory loss, the court stated: "I did not find [the] mother's testimony to be credible at all. She had very selective memory. The court did observe her during her testimony and her demeanor and so forth and I do not find her testimony to be credible." Santos argues, however, that "the only evidence" produced on the subject was related to Juanita's medical problems and medications. What Santos ignores is that the trial court was free to disbelieve this explanation and find instead that her memory loss was feigned. Given that Juanita clearly recalled things that were neutral or advantageous to her son and could not remember anything damaging to him, the court had a reasonable basis for disbelieving her assertion of memory loss. Accordingly, the court did not err by admitting Juanita's statements.

Santos also argues these statements were testimonial. But the "Sixth Amendment's confrontation clause does not prohibit admitting into evidence 'testimonial' hearsay statements against a defendant if the declarant appears for cross-examination at trial. [Citation.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 463.) Unlike the situation with the 911 tape, where both Juanita's statements and the 911 operator's were admitted, here, only Juanita's statements were at issue. Santos had the opportunity to question Juanita, and therefore, no Sixth Amendment violation occurred.

7

### III

### DISPOSITION

The judgment is affirmed.


                                        MOORE, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.